UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| COURTNEY RICHMOND,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF SOUTH DAKOTA; TROOPER JORDAN ANDERSON, #HP94; OFFICER KEVIN KROHN; CODY JANSEN, #HP; DANIEL HAGGER; MARK HODGES; UNITED STATES DISTRICT COURT SOUTHERN DEVISION;  MINNEHAHA COUNTY CIVIL CLERKS OFFICE; MATT THELEN;<br><br>Defendants. | 4:24-CV-04067-ECS<br><br><br><br>OPINION AND ORDER ON PENDING MOTIONS |

Plaintiff Courtney Richmond commenced this pro se action alleging several violations to his constitutional rights, as well as various tort claims.  His claims arise mainly from a traffic stop, which led to his arrest, the search of his car and home, and ultimately a criminal indictment. Richmond alleges he was the victim of an unreasonable search and seizure, which he claims was retaliation for previously suing the Minnehaha County Clerk of Court's Office.  For the reasons explained below, Richmond's claims are dismissed for failing to properly serve certain defendants, dismissing other defendants on his own accord, for lack of subject-matter jurisdiction, or failing to state a claim upon which relief can be granted.

## I.  Factual and Procedural Background

This case goes back to 2016, when "Richmond entered a non-disclosure agreement with Backyard Specialty [Foods] regarding" a BBQ sauce recipe he inherited from his mother.

1

Richmond v. Weise, No. 4:23-cv-04168-RAL, 2024 WL 1834396, at *1 (D.S.D. Apr. 26, 2024).

At the time, Backyard Specialty had shown interest in "purchasing Richmond's recipe but

ultimately did not do so." Id. Richmond later "believed Backyard Specialty violated the

nondisclosure agreement and initiated various state-court lawsuits" against them. Id.

Following unfavorable resolutions in those cases, in February 2021, Richmond launched

a new state-court case, "alleging appropriation of proprietary information under the South

Dakota Trade Secrets Act, SDCL §§ 37-29-1–11." Id. at 2. That case too resulted in dismissal

for the defendants. Id. Richmond then sued in federal court "alleging breach of contract, various

due process violations, and trade secret claims, among others," against Nolan Wiese, Backyard

Specialty Foods, and the Minnehaha County Clerk of Court's Office. Id. at 1. The court

dismissed those claims for lack of subject-matter jurisdiction. Id. at 5. Richmond, however,

believes that Matt Thelen, the Clerk of Court for the United States District Court for the District

of South Dakota, deprived him of due process by denying him default judgment. Doc. 1 at 2.

Since then, Richmond has been indicted in federal court for possession of

methamphetamine, conspiracy to distribute methamphetamine, and possession of a firearm by a

prohibited person. United States v. Richmond, 4:24-cr-40139-KES (D.S.D.); United States v.

Richmond et al., 4:24-cr-40005-KES (D.S.D.).

Against this backdrop, Richmond filed the present action. The facts alleged in his

Complaint and supplements to it, accepted as true, are as follows: On December 14, 2023, two

state troopers from the South Dakota Highway Patrol had the Brandon Police Department call

Richmond's phone and "tell [him] that someone ran into his car to lure [him] out of his house."

Doc. 1 at 2; Doc. 5 at 5. As Richmond was driving to the police station "to go get the police

report" for the car accident, the two state troopers, along with agents from the Drug Enforcement

Administration ("DEA"), executed a traffic stop. Doc. 1 at 2. The troopers instructed Richmond to get out of his car because they had a warrant for his arrest. Id. The troopers then placed Richmond in the back seat of a patrol car, where he sat for forty minutes. Id. Despite asking to see the arrest warrant, it was not shown to Richmond for more than two hours. Id. While in the patrol car, Richmond suffered a panic attack, for which he did not receive treatment. Id.

Rather than search his vehicle at the scene of the traffic stop, Richmond states that DEA agents drove off with his truck and searched it elsewhere. Doc. 5 at 1. They later reported to have found 117 grams of methamphetamine within it. Id. After his arrest, law enforcement searched his house without a warrant and found more drugs. Id. at 2. Richmond asserts that, upon entering his home, either the DEA agents or the state troopers unwired his home security camera. Id. at 3. He also states that they "left his door wide open and used his car while [he] was in jail," only to return it "3 days before [he] was released." Id.

Richmond states that he was falsely imprisoned for 24 days in the Minnehaha County jail. Id. at 1–2. While there, he was denied treatment for high blood pressure and therapy for a knee injury. Doc. 1 at 3. Richmond believes that his arrest and resulting criminal charges are retaliation for suing the Minnehaha County Clerk of Court's Office in Richmond v. Weise, No. 4:23-cv-04168-RAL, 2024 WL 1834396, at *1 (D.S.D. Apr. 26, 2024). Doc. 1 at 3. As a result, he seeks dismissal of the criminal indictment in United States v. Richmond et al., 4:24-cr-40005-KES (D.S.D.); $10,000 for attorney's fees and lost earnings; an additional $20,000,000 for either actual or punitive damages; and the suppression of all evidence obtained in connection to the traffic stop and his subsequent arrest.[1] See Doc. 1 at 3; Doc. 5 at 2, 5; Doc. 7 at 4.

---

[1] The indictment in United States v. Richmond et al., 4:24-cr-40005-KES was dismissed on December 10, 2024, upon motion from the United States. Richmond still has criminal charges pending in United States v. Richmond, 4:24-cr-40139-KES, but he does not request any relief

Richmond instituted this suit against nine defendants: The State of South Dakota, Trooper Jordan Anderson, Trooper Cody Jansen, Officer Kevin Krohn, Daniel Hagger, AUSA Mark Hodges, the United States District Court for the District of South Dakota Southern Division ("South Dakota District Court"), Matt Thelen, and the Minnehaha County Clerk of Court's Office ("Minnehaha County"). Doc. 1. Yet only four defendants were served: Kevin Krohn, Matt Thelen, Mark Hodges, and the South Dakota District Court. This Court warned Richmond that his failure to properly serve the remaining parties would lead to their dismissal. Doc. 49. The defendants who were served all moved to dismiss, arguing that Richmond failed to state a claim upon which relief can be granted. Docs. 19, 28, 32. Defendants Thelen, AUSA Hodges, and the South Dakota District Court also moved to dismiss for lack of subject-matter jurisdiction. Docs. 28, 32. More recently, Richmond has moved to dismiss some defendants himself. Doc. 62.

On top of the motions to dismiss, ten other motions remain pending:

- Motion to Amend/Correct Complaint, Doc. 37;

- Motion to Stay Discovery, Doc. 38;

- Motion to Strike Motion to Amend/Correct Complaint, Doc. 40;

- Motion for Privilege Log, Doc. 48;

- Notice of Transcripts Received from Minnehaha County and Motion for Relief, Doc. 52;

---

under that case number. To the extent that Richmond does seek dismissal of his indictment or the suppression of evidence in a pending criminal case, he must seek that relief by filing a motion in that case file. It is not appropriate to use a civil action to pursue the dismissal of charges or the suppression of evidence in a pending criminal case.

- Revised Notice of Transcripts Received from Minnehaha County and Motion for Relief, Doc. 53;

- Motion for Relief Regarding Transcripts, Doc. 61;

- Motion to Amend Complaint, Doc. 63;

- Motion to Strike Amended Complaint, Doc. 64; and

- Motion to Strike Amended Complaint, Doc. 66.

Should Richmond's claims survive the defendants' motions to dismiss, the court will work through the remaining motions in as logical of a progression as possible.

## II.    Discussion

### A. Dismissal of Certain Defendants under Rule 4(m)

Rule 4(m) of the Federal Rules of Civil Procedure states, "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against defendant or order that service be made within a specified time." Richmond filed his Complaint on April 10, 2024. Doc. 1. The next day, the Clerk of Court's office provided him with a Summons in a Civil Action for each of the nine defendants. Doc. 8. After 90 days, only four defendants had been served. Docs. 11–15, 18, 24. So on July 11, 2024, this Court entered an order notifying Richmond that it would dismiss his claims against the unserved defendants—the State of South Dakota, Trooper Jordan Anderson, Cody Jansen, and Daniel Hagger—if he did not properly serve each of them by August 12, 2024. Doc. 49.

On August 2, 2024, Richmond filed copies of a UPS ground commercial shipping receipt showing he mailed each unserved defendant a packet of documents. Docs. 56–59. That packet contained a copy of his Complaint, a Summons in a Civil Action, a blank proof of service form,

and a copy of the civil docket sheet. See id. Yet none of those defendants have returned a

waiver of personal service or noticed their appearance, and Richmond has not filed proof of

service to show that the defendants have been served.

      The Federal Rules of Civil Procedure do not allow for service of process of an individual

within the United States by certified mail. Fed. R. Civ. P. 4(e). That said, Rule 4(e)(1) allows

for service in accordance with the law of the "state where the district court is located or where

service is made." Here, in both scenarios, that state is South Dakota.

      Generally, under South Dakota law, "service of process is made by delivering a copy of

the summons to the defendant personally." Rush v. Rush, 866 N.W.2d 556, 559 (S.D. 2015).

But notwithstanding any of provision of South Dakota law, "[a] summons is properly served

upon a defendant in any action by mailing a copy of the summons and two copies of the notice

and admission of service, assuming a copy of the admission of service is signed and returned by

the party being served,"[2] Parsley v. Parsley, 734 N.W.2d 813, 819 (S.D. 2007) (citing SDCL

§ 15-6-4(i)). Along with the summons and two copies of the notice and admission of service

form, the mailing must include "a return envelope, postage prepaid, addressed to the sender."

SDCL § 15-6-4(i).

      Service, however, is not completed upon mailing. See Rush, 866 N.W.2d at 560

("Simply placing the summons and complaint in the mail under SDCL [§] 15-6-4(i) does not

notify or warn a defendant of proceedings against him."). Under the statute, "if the defendant

---

[2] In reality, this rule does not so much allow service by mail, as much as it utilizes the postal
system to facilitate waiver of personal service. Under both federal rules and South Dakota law,
"[a] defendant may admit service of the summons and complaint rather than requiring the
plaintiff to effectuate personal service." Larson Mfg. v. W. Showcase Homes, Inc., No. 4:16-cv-
4118-VLD, 2019 WL 1866326, at *3 (D.S.D. Apr. 25, 2019). But a defendant is not required to
waive personal service, and "service [by mail] is not perfected until the defendant signs [and
returns] the admission of service" form. Rush, 866 N.W.2d at 560.

does not sign [and return] the admission of service within 20 days of mailing, the plaintiff must

secure personal service." Id.; see also SDCL § 15-6-4(i) ("The notice and admission of service

shall set forth that the failure to sign and return the admission of service within twenty days after

the date of mailing without good cause will result in the court ordering the person so served to

pay the costs of *personal service*." (emphasis added)). "The practical effect of this requirement

is that service is not perfected until the defendant signs the admission of service or is personally

served." Rush, 866 N.W.2d at 560; Gibbons v. Pilcher, No. 12-5053, 2013 WL 4647502, at *11

(D.S.D. Aug. 29, 2013) ("If the defendant does not sign the [notice and admission of service

form] and send the executed document back to the plaintiff, then the plaintiff must proceed to

personally serve the defendant." (citing Fed. R. Civ. P. 4(d); SDCL § 15-6-4(i)).

Richmond failed to properly serve the remaining defendants under South Dakota law.

First, the packets he mailed did not include all the necessary documents.  True, he mailed a copy

of his Complaint and summons, but he "did not mail [two copies] of the requisite notice and

admission of service, nor did [he] provide Defendants with a pre-paid[, addressed] return

envelope." Norsyn, Inc. v. Desai, 351 F.3d 825, 830 (8th Cir. 2003).  Without receiving a notice

and admission of service form, the defendants could not waive personal service.  And without

receiving a signed admission of service, Richmond was obliged to personally serve the

defendants, which he did not do.  See SDCL § 15-6-4(i).

Richmond also never filed proof of service.  Section 15-6-4(g) states that "[p]roof of the

service of the summons . . . must state the time, place, and manner of such service."  And when

the manner of service is by mail, proof of service is made by filing an affidavit of mailing and

the admission of service.  SDCL § 15-6-4(g)(5).  The only proof of service Richmond filed was a

UPS receipt for ground commercial shipping, which under South Dakota law is not enough.

And, at least for some defendants, Richmond mailed his summons to the wrong person. Two of the unserved defendants, Jordan Anderson and Cody Jansen, work for the South Dakota Highway Patrol. In his attempt to serve them both, Richmond mailed their summons to the South Dakota Highway Patrol Office in Pierre. Docs. 56, 58. But under South Dakota law, "if [an] action is against a state . . . employee, . . . arising out of his . . . employment . . . a copy of the summons and complaint" must be mailed to the attorney general. SDCL § 15-6-4(d)(6). Likewise, in an action against the State, the plaintiff must serve both the "Governor *and* the attorney general." SDCL § 15-6-4(d)(5) (emphasis added). Here, Richmond only mailed the summons naming the State of South Dakota to the attorney general's office.

Finally, Richmond's deficiencies in service cannot be excused for substantial compliance.

> "Substantial compliance" with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

Wagner v. Truesdell, 574 N.W.2d 627, 629 (S.D. 1998) (quoting State v. Bunnell, 324 N.W.2d 418, 420 (S.D. 1982)). Richmond's defects are neither "minor" nor "technical." See Norsyn, 351 F.3d at 830 ("the mere act of mailing a copy of the summons, coupled with actual receipt by Defendants," is not substantial compliance). As illustrated above, Richmond failed to comply with SDCL § 15-6-4(d)–(i) in several material respects.

In sum, Richmond failed to properly serve the State of South Dakota, Jordan Anderson, Cody Jansen, and Daniel Hagger within the time required under this Court's Rule 4(m) notice. His claims against them are therefore dismissed without prejudice.

## B. Plaintiff's Motion to Dismiss Certain Defendants

On October 31, 2024, Richmond moved "to dismiss certain Defendants from this Case." Doc. 62. His motion requests a court hearing "so that the plaintiff and the court can properly dismiss . . . the State of South Dakota, United States District Court Southern Division, Minnehaha County civil clerks office, [and] Mark Hodges" from this case. Id.

Federal Rule of Civil Procedure 41(a) allows a plaintiff to dismiss an action without an order from the court by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i); see Env't Dynamics, Inc. v. Robert Tyler & Assocs., 929 F. Supp. 1212, 1225–26 (N.D. Iowa 1996) (noting the Eighth Circuit's approval of using Rule 41(a) to dismiss less than all defendants from an action); Johnston v. Cartwright, 355 F.2d 32, 39 (8th Cir. 1966) (expressing the court's preference to view Rule 41(a) liberally).

Although Rule 41(a) uses the term "action" rather than claim, the rule is not necessarily limited to the dismissal of an entire action. When there are multiple defendants in a case, the Eighth Circuit has interpreted Rule 41(a) to allow dismissal of all claims against some defendants. Allowing just some defendants to be dismissed in a multi-defendant suit "is reconcilable with the language of [Rule 41(a)], because an entire 'action' against a particular defendant is voluntarily dismissed, not just some of the claims against that defendant." Env't Dynamics, 929 F. Supp. at 1226; Bailey v. Mayo Clinic, No. 17-cv-02582, 2019 WL 13218719, at *1 (D. Minn. May 28, 2019) (construing Rule 41(a)'s use of "action" to "include all claims asserted against one of multiple defendants"); see also 8 James Wm. Moore et al., Moore's Federal Practice–Civil § 41.21[3][a] (Matthew Bender 3d ed.).

Since no answer or summary judgment motion has been filed, Richmond is free to dismiss a party (or parties) without first seeking leave from this Court by simply filing a notice

of dismissal. Regardless, Richmond's motion to dismiss the State of South Dakota, the South

Dakota District Court, the Minnehaha County Clerk of Court's Office, and AUSA Mark Hodges

is granted. See Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just

terms, add or drop a party.").

### C. 18 U.S.C. § 242 Does Not Provide a Private Cause of Action

Richmond alleges that certain defendants deprived him of due process of law in violation

of 18 U.S.C. § 242. Doc. 1 at 3. But Richmond, as a private citizen, cannot bring a claim under

§ 242.

In relevant part, 18 U.S.C. § 242 states:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any state, territory, common wealth, possession, or district to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, . . . shall be fined under this title or imprisoned not more than one year, or both . . . .

"Section 242 makes it a criminal offense for any person under color of any law to willfully

subject any person to a deprivation of constitutional rights." Stork v. S.D. State Prison, No.

4:23-cv-04128-RAL, 2024 WL 2356759, at *5 (D.S.D. May 23, 2024). "Enforcement of § 242

'rests with the Attorney General and the Justice Department. No private right of action is

provided.'" Id. (quoting Mousseaux v. U.S. Comm'r of Indian Affs., 806 F. Supp. 1433, 1437

(D.S.D. 1992)); see also United States v. Wadena, 152 F.3d 831, 846 (8th Cir. 1998) (stating that

§ 242 does "not give rise to a civil action for damages" and only a prosecutor for the United

States "can bring a complaint under 18 U.S.C. § 242"). Because no private right of action exists

under § 242, Richmond's claims under that section are dismissed with prejudice for failing to

state a claim upon which relief may be granted.

### D. Claims Against the United States and Official Capacity Claims Against Thelen and AUSA Hodges

10

The United States, Thelen, and AUSA Hodges all move to dismiss Richmond's claims under Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject-matter jurisdiction. Jurisdiction is a threshold question that must be determined at the outset. Green Acres Enters. v. United States, 418 F.3d 852, 856 (8th Cir. 2005) (citing Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990)). "When a motion to dismiss challenges the factual basis of a court's jurisdiction, the court may consider affidavits or other documents outside the pleadings without converting the motion to one for summary judgment." Martin v. Gourneau, No. 22-cv-136, 2024 WL 1640945, at *3 (D.N.D. Feb. 28, 2024), R&R adopted, 2024 WL 1637539, aff'd, 2025 WL 687032. It is the plaintiff's burden, when responding to a motion to dismiss, to establish subject-matter jurisdiction and prove jurisdictional facts by a preponderance of the evidence. Buckler v. United States, 919 F.3d 1038, 1044 (8th Cir. 2019); see also Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018).

Liberally construed, Richmond's Complaint alleges tort claims under the Federal Tort Claims Act ("FTCA"). The Federal Defendants, however, argue that Richmond did not exhaust his administrative remedies and thus is not entitled to relief under the FTCA. To support their argument, they submitted declarations from Tiffany Lewis, a Paralegal Specialist of the Office of General Counsel with the Administrative Office of the United States Courts, Doc. 30, and Elijah F. Jenkins, a Supervisory Technical Support Specialist within the United States Department of Justice, Doc. 34. These declarations show that neither the Administrative Office of the United States Courts nor the United States Department of Justice received an administrative claim from Richmond. Doc. 30; Doc. 34 ¶ 3.

"The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941) (collecting cases). But "Congress can

11

waive the United States' sovereign immunity, and 'prescribe the terms and conditions on which the United States consents to be sued, and the manner in which the suit shall be conducted.'" Sleighter v. United States, No. 5:24-cv-05014-RAL, 2025 WL 238880, at *3 (D.S.D. Jan. 17, 2025) (quoting Mader v. United States, 654 F.3d 794, 797 (8th Cir. 2011) (en banc)).  Congress provided a limited waiver of sovereign immunity through the FTCA, United States v. Orleans, 425 U.S. 807, 813 (1976), which made the Federal Government liable "for certain torts of federal employees acting within the scope of their employment," id.; 28 U.S.C. § 2674; see United States v. Kwai Fun Wong, 575 U.S. 402, 418–20 (2015).

Yet before filing an FTCA claim in federal court, a party must exhaust their administrative remedies.  Martin v. Gourneau, No. 24-2207, 2025 WL 687032, at *1 (8th Cir. Mar. 4, 2025); Rollo-Carlson ex rel. Flackus-Carlson v. United States, 971 F.3d 768, 770 (8th Cir. 2020) ("As part of this administrative process, the party 'shall have first presented the claims to the appropriate Federal agency.'" (quoting 28 U.S.C. § 2675(a)).  This "presentment requirement is a jurisdictional prerequisite to filing an FTCA action in federal court."  Rollo-Carlson, 971 F.3d at 770 (citing Mader, 654 F.3d at 808); King v. United States, 3 F.4th 996, 999 (8th Cir. 2021) ("[T]he FTCA unambiguously commands that a plaintiff must administratively exhaust her remedies before filing suit in federal court.").

Richmond has not responded to the argument that he did not exhaust his administrative FTCA claims, and nothing in the record suggests that he presented his claims to either the Administrative Office of the United States Courts or the United States Department of Justice. See Docs. 30, 34; see generally United States v. LePatourel, 571 F.2d 405, 410 (8th Cir. 1978) (requiring FTCA claim against a judicial employee to be presented first to the Administrative Office of the United States Courts); Tucker v. United States, No. 12CV409, 2013 WL 4498897,

at *3 (D. Utah Aug. 19, 2013) (referring to Department of Justice or U.S. Attorney's Office as the correct federal agency for FTCA claims arising from federal prosecutor's actions). Indeed, the opposite is true. The only evidence of record before this Court shows he did not exhaust. Docs. 30, 34. Thus, Richmond has not met his burden of establishing subject-matter jurisdiction under the FTCA.

Richmond also cannot maintain his claims against Thelen or AUSA Hodges in their officially capacity under Bivens. Official capacity claims against a federal employee are claims against the United States. Martin, 2025 WL 687032, at *1. And the United States is immune from Bivens claims under the doctrine of sovereign immunity. Id. Courts must dismiss such claims without prejudice for lack of subject-matter jurisdiction. Id.

Because this Court lacks subject-matter jurisdiction over any FTCA or Bivens claims against the United States or Thelen and AUSA Hodges in their official capacities, the defendants' motion to dismiss as to those claims is granted without prejudice.

**E. Individual Capacity Claims Against Thelen and Hodges**

Thelen and AUSA Hodges also move to dismiss Richmond's individual capacity claims under Federal Rule of Civil Procedure 12(b)(6), arguing that his claims should not be recognized under Bivens. Doc. 29 at 5–9; Doc. 33 at 4–9. They also argue that absolute quasi-judicial and prosecutorial immunity bar Richmond's claims.[3] Doc. 29 at 11; Doc. 33 at 11.

A complaint may be dismissed under Federal Rule of Procedure 12(b)(6) when a plaintiff fails "to state a claim upon which relief can be granted." To withstand a Rule 12(b)(6) motion,

---

[3] As explained above, Richmond moved to dismiss his claims against AUSA Hodges, and this Court granted that motion. Still, even if Richmond had not moved to dismiss him, Richmond's claims against AUSA Hodges would be dismissed regardless for the reasons explained in this subsection.

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint must

contain enough facts "to raise a right to relief above the speculative level." Twombly, 550 U.S.

at 555. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will

not do." Id.

When reviewing a complaint under the Rule 12(b)(6) standard, the court must accept as

true all "factual allegations in the complaint" and afford the plaintiff "all reasonable inferences

from those allegations." Butler v. Bank of Am., 690 F.3d 959, 961 (8th Cir. 2012) (citing Palmer

v. Ill. Farmers Ins., 666 F.3d 1081, 1083 (8th Cir. 2012)). But conclusory allegations of the

elements of a cause of action will not "state a claim to relief that is plausible on its face."

Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Also "if as a matter of law 'it is

clear that no relief could be granted under any set of facts that could be proved consistent with

the allegations,' [the] claim must be dismissed . . . ." Neitzke v. Williams, 490 U.S. 319, 327

(1989) (internal citations omitted) (quoting Hishon v. King and Spalding, 467 U.S. 69, 73

(1984)).

That said, courts must construe pro se complaints liberally  Estelle v. Gamble, 429 U.S.

97, 106 (1976). "Pro se complaints, 'however inartfully pleaded,' [are] held to 'less stringent

standards than formal pleadings drafted by lawyers.'" Parker v. Hueser, 644 F. Supp. 3d 546,

551 (D.S.D. 2022) (alteration in original) (quoting Estelle, 429 U.S. at 106); Fed. R. Civ. P. 8(e)

("Pleadings must be construed so as to do justice."). But a pro se complaint must still adhere to

the minimum requirements of the Federal Rules of Civil Procedure, which require all pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Parker, 644 F. Supp. 3d at 551 (quoting Fed. R. Civ. P. 8(a)(2)). "If a [pro se] complaint does not contain these bare essentials, dismissal is appropriate." Id. (citing Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985)).

Thelen's and AUSA Hodge's motions require this Court to decide whether Richmond can maintain a claim for money damages against two federal employees in their individual capacity for alleged violations of the Fourth and Fifth Amendments.

The Supreme Court first recognized an implied cause of action for money damages under the Constitution in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). There, the Court allowed the plaintiff to pursue money damages against federal officers who violated his Fourth Amendment rights by entering and searching his apartment and arresting him, all without a warrant. Id. at 389. The Supreme Court has only recognized an implied cause of action for money damages under the Constitution in two other cases: (1) for gender discrimination under the Fifth Amendment Due Process Clause against a congressman who fired his female deputy administrative assistant for being a woman, Davis v. Passman, 442 U.S. 228, 248–49 (1979), and (2) for denying medical care under the Eighth Amendment against prison officials whose failure to treat an inmate's asthma resulted in the inmate's death, Carlson v. Green, 446 U.S. 14, 16 n.1 (1980). Aside from Bivens, Davis, and Carlson, the Supreme Court has not recognized an implied cause of action against a federal official for monetary damages to redress a constitutional violation.

More recently, the Supreme Court has warned that a "Bivens remedy is not available for all constitutional violations and expanding the implied cause of action," Parker, 644 F. Supp. 3d

15

at 551, to "'any new context or new category of defendants' is a 'disfavored judicial activity,'"

Martin, 2024 WL 1640945, at *5.  See Ziglar v. Abbasi, 582 U.S. 120, 135 (2017).  In Ziglar, the

Court enunciated a two-part test to assess whether a Bivens action may proceed.  First, courts

must "ask whether the case presents 'a new Bivens context,'" that is, whether it is

"'meaningful[ly]' different from the three cases in which the Court has implied a damages

action."  Egbert v. Boule, 596 U.S. 482, 492 (2022) (quoting Ziglar, 582 U.S. at 139).  A "case

presents a new Bivens context" if it "is different in a meaningful way from" Bivens, Davis, and

Carlson.  Ziglar, 582 U.S. at 139.  What constitutes a meaningful difference includes but is not

limited to:

> the rank of the officers involved; the constitutional right at issue; the generality or
> specificity of the official action; the extent of judicial guidance as to how an officer
> should respond to the problem or emergency to be confronted; the statutory or other
> legal mandate under which the officer was operating; the risk of disruptive intrusion
> by the Judiciary into the functioning of other branches; or the presence of potential
> special factors that previous Bivens cases did not consider.

Id. at 140.  If the claim does not present a new context, it may proceed.  Id.

But if the context is new, the court must continue to the second inquiry—whether "there

are 'special factors' indicating that the judiciary is at least arguably less equipped than Congress

to 'weigh the costs and benefits of allowing a damages action to proceed.'"  Egbert, 596 U.S. at

492 (citing Ziglar, 582 U.S. at 139).  "'[C]entral to [this] analysis' are 'separation-of-powers

principles.'"  Hernández v. Mesa, 589 U.S. 93, 102 (2020) (second alteration in original)

(quoting Ziglar, 582 U.S. at 135).  "If there are sound reasons to think Congress might doubt the

efficacy or necessity of a damages remedy as part of the system for enforcing the law and

correcting a wrong, the courts must refrain from creating that kind of remedy . . . ."  Ziglar, 582

U.S. at 137.  When these special factors exist, "a court may not recognize a Bivens remedy."

Egbert, 596 U.S. at 492 (citing Hernández, 589 U.S. at 102).  But if no "special factors" exist, the

<u>Bivens</u> claim may proceed. Out of deference to Congress being better positioned to recognize and impose "a new substantive legal liability," the Eighth Circuit has "adopted a 'presumption against judicial recognition of direct actions for violations of the Constitution by federal officials.'" <u>Farah v. Weyker</u>, 926 F.3d 492, 500 (8th Cir. 2019) (quoting <u>Neb. Beef, Ltd. v. Greening</u>, 398 F.3d 1080, 1084 (8th Cir. 2005)).

While the Supreme Court articulated a two-part test, "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." <u>Egbert</u>, 596 U.S. at 492. "'[T]he most important question is who should decide whether to provide for a damages remedy, Congress or the courts?' If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no <u>Bivens</u> action may lie." <u>Id.</u> (internal citations omitted) (quoting <u>Hernández</u>, 589 U.S. at 114).

### 1. Richmond's Claims Against Thelen

*New Context.* Richmond claims that Thelen violated his Fifth Amendment right to due process by denying him default judgment in <u>Richmond v. Weise et al.</u>, 4:23-cv-04168-RAL (D.S.D.). Doc. 1 at 1–2. Because <u>Bivens</u> and <u>Carlson</u> involved claims under the Fourth and Eighth Amendments, those cases are meaningfully different and immediately distinguishable. <u>Davis</u>, however, involved a claim under the Fifth Amendment, so this Court focuses on whether Richmond's Fifth Amendment claim meaningfully differs from <u>Davis</u>.

In <u>Davis</u>, the plaintiff was hired to work as a deputy administrative assistant to a United States Congressman. 442 U.S. at 230. After six months of employment, the Congressman fired her because "it was essential that the understudy to [his] Administrative Assistant be a man," despite the plaintiff being an "able, energetic and a very hard worker." <u>Id.</u> The plaintiff sued the Congressman for "damages in the form of backpay," alleging that he "discriminated against her

'on the basis of sex in violation of . . . the Fifth Amendment.'" Id. at 231. The Supreme Court determined the plaintiff had a cause of action for damages under the "equal protection component of the Due Process Clause," which conferred her "a federal constitutional right to be free from gender discrimination." Id. at 235, 244, 246.

Richmond's claim against Thelen is meaningfully different. First, his claim involves the procedural due process component of the Fifth Amendment, not equal protection. Second, the two cases have different categories of defendants. While Davis involved a United States Congressman, this case involves a claim against the Clerk of Court for the United States District Court for the District of South Dakota. Lastly, the nature of the conduct at issue is inherently different. In denying default judgment, Thelen had a duty to act in accordance with Federal Rule of Civil Procedure 55, which provides clear directives on when a clerk can or cannot enter default. Whereas in Davis, the Congressman was making discretionary employment decisions based on his own judgment.

*Special Factors.* Here, special factors counsel against extending Bivens to claims against a clerk of court for the federal judiciary. First, "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." Wilkie v. Robbins, 551 U.S. 537, 562 (2007) (quoting Bush v. Lucas, 462 U.S. 367, 389 (1983)). This is especially true when those public officials are employees of the judiciary. Allowing litigants to sue judicial employees in their individual capacity for money damages "would contribute not to principled and fearless decision making but to intimidation." Pierson v. Ray, 386 U.S. 547, 554 (1967). And Congress is better situated than courts are to fashion a remedy that will not raise "a tide of suits threatening legitimate initiative on the part of the Government's employees." Wilkie, 551 U.S. at 562 (citing Bush, 462 U.S. at 389).

Therefore, because Richmond's claims present a new <u>Bivens</u> context and special factors counsel against recognizing a <u>Bivens</u> claim, Richmond has failed to state a cognizable claim.

### 2. Quasi-Judicial Immunity

Even if this Court were to recognize a <u>Bivens</u> cause of action, the doctrine of quasi-judicial immunity would bar Richmond's claims against Thelen. The doctrine of quasi-judicial immunity extends "judicial immunity 'to officials other than judges . . . because their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as part of their function." <u>Hamilton v. City of Hayti</u>, 948 F.3d 921, 928 (8th Cir. 2020) (alteration in original) (quoting <u>Antoine v. Byers & Anderson, Inc</u>, 508 U.S. 429, 436 (1993)). "For court clerks, absolute immunity has been extended [beyond] acts that are discretionary" to those that are "taken at the direction of a judge, or taken according to court rules." <u>Id.</u> Because there is a "presumption 'that qualified, rather, than absolute, immunity is sufficient to protect government officials in the exercise of their duties, . . . the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'" <u>Id.</u> (alteration in original) (quoting <u>Robinson v. Freeze</u>, 15 F.3d 107, 108 (8th Cir. 1994)).

Thelen's decision to deny Richmond's request for default was taken in accordance with court rules. Rule 55 of the Federal Rules of Civil Procedure establishes the procedure for entering default judgment. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). While the clerk's decision to grant or deny default is not discretionary, it is an act taken pursuant to court rules. The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceeding in

the United States district courts." Fed. R. Civ. P. 1; 28 U.S.C. § 2072(a) (vesting the Supreme

Court with "the power to prescribe general rules of practice and procedure . . . for cases in the

United States district courts"). Since Thelen acted according to court rules when denying

Richmond's request for default judgment, he is entitled to quasi-judicial immunity.

This Court's application of quasi-judicial immunity to a clerk of court's decision to enter

a default judgment is also in line with other circuits. The Eleventh Circuit extends absolute

quasi-judicial immunity to nonjudicial officials when their duties are "integrally related to the

judicial process." Jenkins v. Clerk of Ct., U.S. Dist. Ct., S. Dist. Fla., 150 F. App'x 988, 990

(11th Cir. 2005) (per curiam). The Eleventh Circuit employs a functional analysis to determine

whether an individual's duties are "integrally related to the judicial process." Id. In so doing,

the court in Jenkins held that "[t]he decision to enter a default judgment or not is the most

judicial of actions the clerk could make." Id. (citing Lundahl v. Zimmer, 296 F.3d 936, 939

(10th Cir. 2002)). Similarly, in Lundahl, the Tenth Circuit recognized that "[c]ourt clerks,

entrusted with the entry of default judgments pursuant to Fed. R. Civ. P. 55, fall within the

category of judicial officers who, through the performance of 'judicial acts,' 'authoritatively

adjudicate private rights.'" 296 F.3d at 939. Because the entry of "default judgment

unquestionably constitute[d] a judicial act," the court upheld the application of absolute

immunity to the clerk of court. Id.

Although, even if Thelen did not receive quasi-judicial immunity, Richmond had no right

to default judgment in Richmond v. Weise et al., No. 4:23-cv-04168-RAL (D.S.D.). As stated

above, default is authorized only "[w]hen a party against whom a judgment for affirmative relief

is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Under Rule 12(a), a

party has 21 days after being served with the summons and complaint to plead or otherwise

defend. Fed. R. Civ. P. 12(a)(1)(A)(i). A party may "otherwise defend" by moving to dismiss.

See Sturgis Area Chamber of Com. v. Little Sturgis Rally & Races for Charity, Inc., No. 5:08-

cv-5024-KES, 2009 WL 10722464, at *2 (D.S.D. May 19, 2009) ("Federal courts have held that

a party may otherwise defend within the meaning of Rule 55(a) by filing a motion to dismiss for

lack of personal jurisdiction."). Defendants Weise and Backyard Specialty Foods were served

on October 25, 2023, and moved to dismiss on November 3, 2023. Docs. 3, 5, 8 in 4:23-cv-

04168-RAL. Defendant Minnehaha County Clerk of Courts office was served on October 19,

2023, and it moved to dismiss on November 8, 2023. Docs. 4, 12 in 4:23-cv-04168-RAL. Each

party timely defended themselves and were not in default. See Doc. 27 in 4:23-cv-04168-RAL.

Thus, Thelen's denial of default judgment did not violate Richmond's Fifth Amendment Right to

Due Process.

### 3. Richmond's Claims Against AUSA Hodges

*New Context.* Liberally construed, Richmond's Complaint alleges that AUSA Hodges

violated his Fourth Amendment right to be free from malicious prosecution. Because Davis and

Carlson involved claims under the Fifth and Eighth Amendments, those cases are meaningfully

different. Bivens, however, involved a claim under the Fourth Amendment, so this Court

focuses on whether Richmond's Fourth Amendment claim meaningfully differs from Bivens.

In Bivens, the plaintiff asserted that Federal Bureau of Narcotics agents entered his

apartment, searched it "from stem to stern," and arrested him—all without a warrant. 403 U.S. at

389. He also alleged that "[t]he agents manacled [him] in front of his wife and children, and

threatened to arrest [his] entire family." Id. The agents then took the plaintiff to "the federal

courthouse" interrogated him, booked him, "and subjected [him] to a visual strip search." Id.

The plaintiff argued that the agents' conduct violated his Fourth Amendment protection against unreasonable searches and seizures.

Richmond's claims against AUSA Hodges present a new context. First, <u>Bivens</u> did not recognize an implied cause of action for damages under the Fourth Amendment for malicious or wrongful prosecution; it recognized one for unreasonable searches and seizures. Second, Richmond's claim would extend <u>Bivens</u> to a new class of defendants—federal prosecutors. Third, the conduct at issue in <u>Bivens</u>—warrantless searches and seizures—is dissimilar to the functions that a federal prosecutor performs, i.e., information-gathering, case-building, presenting to a grand jury, and trying cases. So even if the constitutional amendment at issue is the same, "the alleged misdeeds are different from those in <u>Bivens</u>." <u>Farah</u>, 926 F.3d at 498.

"[T]he mechanism of injury is [also] different." <u>Id.</u> at 499. As the Eighth Circuit recognized in <u>Farah</u>, "[i]n <u>Bivens</u>, the plaintiff's injuries—'humiliation, embarrassment, and mental suffering'—were directly caused by the officers' conduct." <u>Id.</u> But Richmond's alleged injuries involved "a series of intervening steps"—AUSA Hodges decision to pursue charges against Richmond, "the grand jury that voted to indict him, and the judges and magistrates who" preside over the case. <u>See id.</u> "And those intervening steps involved decisions by independent legal actors." <u>Id.</u>

Sure, similarities exist between <u>Bivens</u> and the facts Richmond pleads in his Complaint. For instance, both involve allegations of unreasonable searches and seizures. But Richmond does not allege that AUSA Hodges was directly involved in his arrest or the search of his property. Given "the Supreme Court's direction that a context can be new even if it involves the same constitutional right as an existing case," it would be a mistake to treat alike all cases that involve allegations of unreasonable searches and seizures. <u>Farah</u>, 926 F.3d at 499.

22

*Special Factors.* Because Richmond's claim presents a new context, this Court must now decide whether there are "special factors" that counsel "hesitation in the absence of affirmative action by Congress." Ziglar, 582 U.S. at 136 (quoting Carlson, 446 U.S. at 18); Farah, 926 F.3d at 500.

One special factor counseling hesitation is that Congress has already provided a remedy to address the sort of injury Richmond allegedly suffered. "The so-called Hyde Amendment allows courts to award attorney fees to criminal defendants who prevail against vexatious, frivolous, or bad-faith positions taken by the government." Farah, 926 F.3d at 501 (cleaned up). "[T]hose who are wrongly convicted and sentenced may seek release under 28 U.S.C. § 2255 or sue the government for damages." Id. (citing 28 U.S.C. § 1495). And "[u]nder the Unjust Conviction law, a criminal defendant can recover damages from the United States if he can prove a court 'reversed or set aside [his conviction] on the ground that he is not guilty of the offense of which he was convicted.'" Karkalas v. Marks, No. 19-948, 2019 WL 3492232, at *10 (E.D. Penn. July 31, 2019) (alteration in original) (citing 28 U.S.C. § 2513(a)). A criminal defendant that can prove he was wrongfully convicted "can recover up to $50,000 for each twelve-month period of wrongful incarceration." Id. (citing 28 U.S.C. § 2513(e)). While these alternative remedies may not be as comprehensive or preemptive as Richmond would like, the Supreme Court has "made clear that even remedies that provide no compensation for victims and little deterrence for violators, such as injunctions and writs of habeas corpus, trigger the general rule that, 'when alternative methods of relief are available, a Bivens remedy usually is not.'" Farah, 926 F.3d at 502.

Separation of powers concerns also counsel against recognizing a new cause of action. A Bivens remedy for prosecutorial misconduct creates "the risk of burdening and interfering with

the executive branch's investigative and prosecutorial functions." Id. at 500. For example, by

raising a Bivens claim for prosecutorial misconduct while a criminal case is pending, plaintiffs

could force courts to "preemptively examine the actions of executive branch prosecutors in the

context of a civil case." Gedeon v. United States, No. 23-cv-1600, 2023 WL 3998366, at *4

(E.D. Penn. June 13, 2023). Not only does this risk interfering with prosecutorial discretion, but

it could also impact "the efficient administration of justice" and "intrud[e] on the function of

another branch of government." Id.; see also Wayte v. United States, 470 U.S. 598, 607–08

(1985) ("[T]he decision to prosecute is particularly ill-suited to judicial review."); Webb v. U.S.

VA, No. CV-19-02955, 2019 WL 6769698, at *3–4 (D. Ariz. Dec. 11, 2019) (finding that

special factors in a malicious prosecution claim weigh against recognizing a new Bivens

context). Whether a criminal prosecution was malicious or involved misconduct also "involves a

host of considerations that must be weighed and appraised," and that task "should be committed

to those who write the laws rather than those who interpret them." Ziglar, 582 U.S. at 135–36

(cleaned up).

     In short, Richmond's claims against AUSA Hodges would extend Bivens to a new

context and special factors counsel against recognizing an implied cause of action for damages.

He, therefore, fails to state a claim upon which relief may be granted, and his claims against

AUSA Hodges in his individual capacity shall be dismissed.

### 4. Prosecutorial Immunity

     Even if this Court were to imply a Bivens case of action, the doctrine of prosecutorial

immunity bars Richmond's claims against AUSA Hodges in his individual capacity. A federal

prosecutor has absolute immunity for decisions "intimately associated with the judicial phase of

the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see Amsinger v.

24

Munchnick, No. 12-cv-906, 2013 WL 3243379, at *4 (E.D. Mo. June 26, 2013) (stating that "[c]riminal prosecutors are shielded by absolute immunity"). This includes decisions related to "initiating a prosecution and in presenting the [government's] case." Imbler, 424 U.S. at 431. "Because the immunity depends upon the functional nature of the prosecutor's activities, allegations of improper motive in the performance of prosecutorial functions will not defeat its protection." Sample v. City of Woodbury, 836 F.3d 913, 916 (8th Cir. 2016) (citing Myers v. Morries, 810 F.2d 1437, 1446 (8th Cir. 1987); see also Buckley v. Fitzsimmons, 509 U.S. 259, 273–74, n.5 (1993) (expressing that a prosecutor's decision to indict is shielded by absolute immunity, "whether he has probable cause or not"); Danielson v. Huether, 355 F. Supp. 3d 849, 859–60 (D.S.D. 2018) (applying prosecutorial immunity to decisions "intimately associated with the judicial process"); Burns v. Reed, 500 U.S. 478, 485 (1991) (noting that in Imbler the Supreme Court determined absolute immunity extended to a prosecutor's "knowing use of false testimony before the grand jury"). As a result, AUSA Hodges' decision to prosecute Richmond receives absolute immunity. Thus, Richmond's malicious prosecution claim is barred.

## F.  42 U.S.C. § 1983 Claims Officer Kevin Krohn's Motion to Dismiss

Officer Kevin Krohn moves for dismissal under Rule 12(b)(6), arguing that Richmond's Complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." Doc. 20 at 1 (citing Orr v. S.D. Bd. of Regents, 492 F. Supp. 3d 964, 966 (D.S.D. Oct. 5, 2020)). Krohn argues that Richmond has failed to state a claim against him because Richmond's Complaint has not pleaded that Krohn played any part in the alleged deprivation of Richmond's rights. As stated earlier, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Topchian v. JPMorgan Chase Bank, 760

F.3d 843, 848 (8th Cir. 2014) (quoting Ashcroft, 556 U.S. at 678).  "Although the focus of a

Rule 12(b)(6) motion is ordinarily the asserted lack of factual plausibility, Rule 12(b)(6) also

permits dismissal of a claim that lacks a recognized or cognizable legal theory, even after Iqbal."

Shepard v. Emps. Mut. Cas. Co., 476 F. Supp. 3d 862, 869 (N.D. Iowa 2020) (citing Couzens v.

Donohue, 854 F.3d 508, 519 (8th Cir. 2017)).  "Determining whether a complaint states a

plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on

its judicial experience and common sense." Ashcroft, 556 U.S. at 679; Ingram v. Ark. Dep't of

Corr., 91 F.4th 924, 929 (8th Cir. 2024).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege sufficient facts

to show "(1) that the defendant(s) acted under color of state law, and (2) that the alleged

wrongful conduct deprived the plaintiff of a constitutionally protected federal right." Schmidt v.

City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009) (citing DuBose v. Kelly, 187 F.3d 999,

1002 (8th Cir. 1999)).

Even when Richmond's pleadings are taken as true and liberally construed, he is not

entitled to relief against Krohn.  A pro se complaint must still adhere to the Federal Rules of

Civil Procedure's minimum requirements, which require all pleadings to contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Parker, 644 F. Supp.

3d at 551 (quoting Fed. R. Civ. P. 8(a)(2)).  "If a complaint does not contain these bare

essentials, dismissal is appropriate." Id. (citing Beavers, 755 F.2d at 663.  The fundamental basis

of the pleading requirement is to give "fair notice" of the claims asserted and the ground on

which they rest. Minn. Off. Plaza LLC v. Dlorah, Inc., No. 5:21-cv-05061-KES, 2022 WL

2915956, at *2 (D.S.D. July 25, 2022) (quoting Twombly, 550 U.S. at 555). "[T]he complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 319 (2007) (quoting Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005)).

Aside from Krohn being named in the Complaint's caption, the content of Richmond's Complaint does not mention Krohn or contain any specific allegations against him. "If a defendant is not mentioned in the body of the complaint, the complaint does not state a cause of action against that defendant." Startup v. Bear Stearns Residential Mortg. Corp., No. 10-01961, 2011 WL 13227926, at *2 (C.D. Cal. Feb. 14, 2011); see also Jones v. Town of Quartzsite, No. CV-13-02170, 2015 WL 12551172, at *5 (D. Ariz. Mar. 30, 2015) (finding plaintiff failed to state a claim when complaint failed to mention defendants); Hobson v. Temple-Inlet, No. 07-1318, 2007 WL 3101837, at *2 (D. Ariz. Oct. 22, 2007) (dismissing case under Rule 12(b)(6) because complaint did not mention the defendant). "A proper § 1983 claim requires factual details about a defendant's personal involvement in the violation of a plaintiff's rights." Pennington v. Morgan, 24-cv-00838, 2025 WL 348609, at *2 (W.D. Va. Jan. 30, 2025) (citing Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017)).

The Complaint also refers to many different law enforcement agencies: The South Dakota Highway Patrol, the Brandon Police Department, the Drug Enforcement Agency, and the Sioux Falls Police Department. Docs. 1, 5, 7. But Richmond's pleadings do not tie Krohn to any of them. See id. At best, based solely on the use of "Officer" before his name in the Complaint's caption, this Court is left to speculate that Krohn is an employee of at least one of the law enforcement agencies involved. See id. And even then, no facts assert that Krohn took part in, let alone was present for, the alleged constitutional violations. See id. Based only on the

Complaint and its supplements, Richmond's allegations have nothing to do with Krohn. See id. To survive a motion to dismiss under 12(b)(6), the well-pleaded factual allegations must be enough to "raise a right to relief above the speculative level." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (quoting Twombly, 550 U.S. at 555). Richmond's pleadings have not met this threshold and must be dismissed.

Richmond later attempts to cure factual deficiencies through his response to Krohn's Motion to Dismiss. Doc. 22. Sure enough, his response clarifies that Krohn was the officer from the Brandon Police Department who employed the ruse to lure Richmond out of his home. Id. at 1–2. Generally, a brief in response to a motion to dismiss cannot cure deficiencies in a plaintiff's pleadings. Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)). "[I]t is black-letter law that . . . a court evaluating . . . a motion to dismiss[] must focus only on the allegations in the pleadings." Halyckyj v. Medtronic, Inc., No. 24-10691, 2024 WL 5121022, at *1 (E.D. Mich. Dec. 16, 2024) (alterations in original) (quoting Bates v. Green Farms Condo. Ass'n, 958 F.3d 470, 483 (6th Cir. 2020)). But "when evaluating a motion to dismiss a pro se plaintiff's complaint the Eighth Circuit Court of Appeals requires district courts to consider both the allegations made in a complaint and the allegations in the plaintiff's response to the motion to dismiss." Wallace v. U.S. Army, No. 22-cv-367, 2023 WL 4295516, at *3 (D. Neb. June 30, 2023); see also Neudecker v. Boisclair Corp., 351 F.3d 361, 362 (8th Cir. 2003); Anthony v. Runyon, 76 F.3d 210, 214 (8th Cir. 1996).

Although, even when this Court considers Richmond's response as a part of his Complaint, his claims still fail because they are based on vicarious liability. Claims based on vicarious liability are not cognizable under 42 U.S.C. § 1983. Marsh v. Phelps Cnty., 902 F.3d

745, 754 (8th Cir. 2018). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. (alteration in original) (quoting Ashcroft, 556 U.S. at 676); Jones v. City of St. Louis, 104 F.4th 1043, 1050 (8th Cir. 2024). In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Marsh, 902 F.3d at 754 (quoting Ashcroft, 556 U.S. at 677). Richmond's response makes clear that any claim he intended to bring against Krohn was based on vicarious liability. Doc. 22 at 2. Indeed, after describing Krohn's part in the ruse, Richmond states, "The plaintiff argues this makes officer Krohn a part of the claim since the plaintiff was injured by the arresting parties mentioned in the lawsuit." Id. Thus, any injury Richmond allegedly suffered resulted from the arresting officers, not Krohn.

### G. Supplemental Jurisdiction and State Tort Claims

Construing the Complaint liberally, Richmond also alleges various state-law claims for false imprisonment, false arrest, conversion, trespass, and invasion of privacy. Because these claims are based on state, not federal, law, and there is not complete diversity of citizenship here, this Court would have to exercise supplemental jurisdiction. Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 26–27 (2025). Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over state-law claims that "form part of the same case or controversy" as the claims that fall within this Court's original jurisdiction. That said, a federal "court may decline to exercise supplemental jurisdiction if it 'has dismissed all claims over which it has original jurisdiction.'" Rasmussen v. South Dakota, No. 3:22-cv-03021-RAL, 2023 WL 2991936, at *5 (D.S.D. Apr. 18, 2023) (quoting 28 U.S.C. § 1367(c)(3)); see also Engel v. Engel, No. 3:21-cv-03020-RAL, 2022 WL 2208875, at *8 (D.S.D. June 21, 2022). District courts are

"afforded broad discretion in determining whether to exercise supplemental jurisdiction." Crest Const. II, Inc. v. Doe, 660 F.3d 346, 359 (8th Cir. 2011) (citing Green v. Ameritrade, Inc., 279 F.3d 590, 599 (8th Cir. 2002)). "In determining whether to exercise supplemental jurisdiction, courts consider judicial efficiency, convenience, and fairness to litigators." Magee v. Trs. of the Hamline Univ., 957 F. Supp. 2d 1047, 1060 (D. Minn. 2013) (citing Condor Corp. v. City of St. Paul, 912 F.2d 215, 221 (8th Cir. 1990)). "In assessing efficiency, convenience, and fairness, courts look to a number of factors, including 'the state of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum.'" Id. (citation omitted). Federal "[c]ourts should 'exercise judicial restraint and avoid state law issues wherever possible' . . . ." Id. (quoting Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir. 2000)).

Because Richmond has not stated a viable claim within this Court's original jurisdiction, it declines to exercise supplemental jurisdiction over his state-law tort claims. See Mountain Home Flight Serv , Inc. v. Baxter Cnty., 758 F.3d 1038, 1045 (8th Cir. 2014) (deciding that district court acted within its discretion to decline supplemental jurisdiction after dismissing § 1983 claims); Philpott v. Weaver, 497 F. App'x 667, 667 (8th Cir. 2012) (per curiam) (same). Dismissing these claims now while still in the early stages of litigation allows Richmond to seek relief in state court if he so chooses.

### H. Richmond's Amended Complaints

The Court next addresses Richmond's two pending motions to amend/correct his Complaint. After Richmond filed his original Complaint, Defendants Krohn, Hodges, Thelen, and the United States District Court for the District of South Dakota all moved to dismiss under Rule 12(b) based either on lack of subject-matter jurisdiction or failure to state a claim. Docs.

19, 28, 32. Shortly after the defendants moved to dismiss, Richmond filed a pleading captioned "amended complaint." Doc. 37. The amended complaint was docketed as a motion. The amendment provides factual allegations not presented in his original complaint, adds the United States as a party, and adds a claim under the FTCA. The defendants argue the amended complaint should be struck for not complying with the Federal Rules of Civil Procedure or this Court's local rules, or in the alternative, the amendment being futile. About six months later, Richmond filed a second amended complaint. Doc. 63. This second amendment asserts a claim under 42 U.S.C. §§ 1985–1986. Id. The defendants moved to strike the second amendment as well. Docs. 64, 66.

### 1. Legal Standard to Amend a Complaint

Federal Rule of Civil Procedure 15(a)(1) allows plaintiffs to amend their complaint once "as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, . . . 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

"When a plaintiff is suing multiple defendants," as Richmond is here, "that party has one opportunity to amend the Complaint as of right, and not one opportunity per defendant or per version of pleading." Bank of Am. v. TemPay LLC, No. 19CV674, 2019 WL 9359721, at *8 (W.D.N.Y. Nov. 7, 2019) (internal citations omitted); see also Kieffer v. Tundra Storage LLC, No. 14-3192, 2015 WL 5009012, at *2–3 (D. Minn. Aug. 21, 2015). As the advisory committee notes make clear, "[t]he 21-day periods to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative." Fed. R. Civ. P.

15(a)(1) advisory committee's note to 2009 amendment. The 21-day deadline to amend as a matter of course is triggered by the first defendant's response. See id. ("If a responsive pleading is served after one of the designated motions is served . . . there is no new 21-day period."); Bank of Am., 2019 WL 9359721, at *8 ("amendment as a matter of course is triggered by the first defense response").

For example, in Kieffer v. Tundra Storage LLC, an incarcerated federal prisoner proceeding pro se sued multiple defendants. 2015 WL 5009012, at *1. Some defendants promptly filed an answer. Id. at *1–2. A week later, the remaining defendants moved to dismiss under Rule 12(b). Id. at 2. The plaintiff then filed an amended complaint. Id. Even though the plaintiff's amended complaint was filed within 21 days of the most recent motion to dismiss, the court found that he "did not satisfy the requirements to amend as a matter of course" because the first responsive pleading—the promptly filed answer—was filed more than 21 days before the plaintiff's amended complaint. Id. at *3. The court held that the 21-day period to amend "did not reset when subsequent pleadings and motions were filed." Id.; see also Yeoman v. Doerfler, No. 15-cv-024, 2015 WL 7756004, at *2–3 (D.N.D. Dec. 1, 2015); Trujillo v. City of Newton, No. 12-2380, 2013 WL 535747, at *1 (D. Kan. Feb. 12, 2013) (finding plaintiff did not comply with Rule 15(a)(1) because 21-day window began at the filing of the earliest responsive pleading or Rule 12 motion).

Defendant Krohn moved to dismiss under Rule 12(b) on May 21, 2024. Doc. 19. Defendants Thelen and AUSA Hodges moved to dismiss on June 10, 2024, and June 13, 2024, respectively. Doc. 28, 32. The 21-day deadline to file an amended complaint as a matter of course began on May 21, 2024. Thus, Richmond had until June 11, 2024, to amend as a matter

of course. Because Richmond did not file his amended complaint until June 25, 2024, he needed either consent from the opposing parties or leave from this Court. Doc. 37.

A "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be "liberally granted where necessary to bring about the furtherance of justice and where the adverse party will not be prejudiced." Am. Fam. Mut. Ins. v. Hollander, 705 F.3d 339, 348 (8th Cir. 2013) (citation omitted). But a party has no absolute right to amend their pleadings. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008). Courts may deny leave to amend if there is "undue delay, bad faith on part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see Liscomb v. Boyce, 954 F.3d 1151, 1156 (8th Cir. 2020) ("Futility is a valid basis for denying leave to amend." (citation omitted)). An amendment is futile when "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)." Cornelia I. Crowell GST Tr. v. Possis Med., Inc., 519 F.3d 778, 782 (8th Cir. 2008); Liscomb, 954 F.3d at 1156 ("We have held that amending is futile if the amended complaint does not meet pleading requirements.").

### 2. Richmond's First Amended Complaint is Futile

Richmond's first amended complaint fails to remedy the deficiencies found in his original Complaint. The amendment contains no new factual allegations; it rests only on the statement of facts from his original Complaint. See Doc. 37 at 2 ("The statement of claims has been entered in the first complaint."). It does, however, attempt to add the United States as a defendant and cites the Federal Tort Claims Act. But as explained above, any FTCA claim must be dismissed for lack of subject-matter jurisdiction because Richmond did not exhaust his administrative remedies. Richmond's first motion to amend his Complaint is, therefore, denied as futile.

### 3. Richmond's Second Amended Complaint is Futile

Richmond's second amended complaint raises a new claim against AUSA Hodges under

42 U.S.C. §§ 1985–86.  Richmond does not specify whether he sues AUSA Hodges in his

official or individual capacity.  Several circuit courts, however, have held that federal actors

cannot be sued in their official capacity under § 1985 or § 1986.  See, e.g., Fuqua v. Turner, 996

F.3d 1140, 1157 (11th Cir. 2021) ; Davis v. U.S. Dep't of Just., 204 F.3d 723, 726 (7th Cir.

2000); Affiliated Pro. Home Health Care Agency v. Shalala, 164 F.3d 282, 286 (5th Cir. 1999).

So, this Court construes Richmond's amended complaint to assert an individual-capacity claim

against AUSA Hodges.

But even then, Richmond's claims are subject to dismissal.  Prosecutorial immunity

shields AUSA Hodges from suits brought under 42 U.S.C. §§ 1985 and 1986.  Snelling v.

Westhoff, 972 F.2d 199, 200 (8th Cir. 1992) (per curiam) (upholding dismissal of claims brought

under § 1985 on prosecutorial immunity grounds); see also Arrington v. Street, No. 22-cv-2362,

2022 WL 18356337, at *2 (D. Minn. Oct. 25, 2022) (stating that the doctrine of prosecutorial

immunity applies "equally to claims brought under § 1983 and to claims brought under § 1985");

Green v. Paley, 24-cv-3459, 2024 WL 3890693, at *6 (S.D. Ohio Aug. 21, 2024) (stating that

prosecutorial immunity applies to conspiracy claims under § 1985); Gartin v. Chaves Cnty. Bd.

of Comm'rs, No. 07-0385, 2007 WL 9729082, at *2 (D.N.M. Dec. 20, 2007) (applying

prosecutorial immunity to claims under § 1985 and § 1986), R&R adopted, 2008 WL 11452000.

And prosecutorial immunity cannot be defeated by showing that a prosecutor acted wrongfully

or maliciously.  See Reasonover v. St. Louis Cnty., 447 F.3d 569, 580 (8th Cir. 2006) ("[A]

prosecutor is absolutely immune from a civil conspiracy charge when his alleged participation in

the conspiracy consists of otherwise immune acts," even if they "knowingly presented false,

misleading, or perjured testimony."). Because the gravamen of Richmond's claims against

AUSA Hodges are that he "illegally utilize[ed] his authority to convict . . . Richmond," Doc. 63

at 3, Richmond's claims pertain to actions AUSA Hodges took in his role as a federal

prosecutor.[4] See Imbler, 424 U.S. at 431 (holding that prosecutors enjoy absolute immunity for

acts associated with "initiating a prosecution" and "presenting the . . . case"). Thus, AUSA

Hodges is entitled to absolute immunity.

      Even if prosecutorial immunity did not bar Richmond's claims, he has not asserted a

claim under § 1985 or § 1986. Section 1985 "creates a private civil remedy for three prohibited

forms of conspiracy to interfere with civil rights under that section." Main St. Props. LLC v.

City of Bellevue, No. 20CV278, 2021 WL 736711, at *5 (D. Neb. Feb. 25, 2021) (quoting

Montoya v. FedEx Ground Package Sys., Inc., 614 F.3d 145, 149 (5th Cir. 2010)). Subsection 1

"prohibits [a] conspiracy to prevent a federal officer from performing his duties." Wisdom v.

Dep't of Hous. & Urb. Dev., 713 F.2d 422, 425 (8th Cir. 1983) (citing 42 U.S.C. § 1985(1)).

Richmond does not claim to be a federal officer, nor does he plead any facts that would state a

claim under § 1985(1). Subsection 2 "provides a cause of action for damages sustained as a

result of conspiracies to obstruct justice." Kelly v. City of Omaha, 813 F.3d 1070, 1077 (8th Cir.

2016) (citing 42 U.S.C. § 1985(2)). And subsection 3 provides a cause of action for

"conspiracies to deprive individuals of equal privileges and immunities and equal protection

under the law." Id. (citing 42 U.S.C. § 1985(3)).

      Although Richmond does not specify which subsection he asserts his claim under, he

fails to state a claim under them all. "[T]o state a claim for conspiracy under § 1985, a plaintiff

---

[4] It should be noted that on the date this Opinion and Order was filed, Richmond has not been
convicted in his pending criminal case. Indeed, that case has yet to go to trial. See Doc. 33 in
United States v. Richmond, 4:24-cr-40139-KES (D.S.D.).

'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'" Id. at 1077–78 (quoting City of Omaha Emps. Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989)). "This standard requires that 'allegations of conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action.'" Id. at 1078 (alteration in original) (quoting Nelson v. City of McGehee, 876 F.2d 56, 59 (8th Cir. 1989)). Richmond has failed to allege facts showing that AUSA Hodges' alleged misconduct arose from an agreement with anyone else. Richmond makes no showing that AUSA Hodges agreed or had a meeting of the minds with any other named defendant to take unconstitutional action against Richmond. Without more, Richmond failed to allege a conspiracy under § 1985. See id. And his second amended complaint, even when viewed alongside his original Complaint, does not provide credible inferences that AUSA Hodges conspired with anyone else to deprive Richmond of his rights, privileges, or immunities.

Lastly, "to bring a § 1986 claim for failure to prevent a conspiracy to interfere with civil rights, a plaintiff must show that (1) defendants had actual knowledge of a § 1985 conspiracy, (2) the defendants had the power to prevent or aid in preventing the commission of the § 1985 conspiracy, (3) the defendants neglected or refused to prevent the conspiracy, and (4) a wrongful act was committed." Keefe v. City of Minneapolis, 785 F.3d 1216, 1223–24 (8th Cir. 2015). In other words, "a § 1986 cause of action is dependent upon a valid § 1985 claim." Id at 1224 (citing Barstad v. Murray Cnty., 420 F.3d 880, 887 (8th Cir. 2005). Because Richmond does not state a claim under § 1985, he also fails to state a claim under § 1986. His second motion to amend his Complaint is, therefore, denied as futile.

### III.   Conclusion

For the reasons explained above, it is hereby

ORDERED that the State of South Dakota, Trooper Jordan Anderson, Trooper Cody Jansen, and Daniel Hagger shall be dismissed under Rule 4(m) for lack of service. It is further

ORDERED that Courtney Richmond's Motion to Dismiss Certain Defendants, Doc. 62, is granted. To the extent they have not already been dismissed, the State of South Dakota, the United States District Court for the District of South Dakota Southern Division, Minnehaha County Clerk of Court's Office, and Mark Hodges are all dismissed. It is further

ORDERED that Defendant Krohn's Motion to Dismiss, Doc. 19, is granted. It is further

ORDERED that Defendant Matt Thelen's Motion to Dismiss, Doc. 28, is granted. It is further

ORDERED that Defendant Mark Hodges' Motion to Dismiss, Doc. 32, is granted. It is further

ORDERED that the United States' Motion to Strike Richmond's Motion to Amend/Correct Complaint, Doc. 40, is granted, and Richmond's first Motion to Amend/Correct Complaint, Doc. 37, is denied as futile. It is further

ORDERED that Defendants' motions to strike amended complaint, Docs. 64 and 66, are granted, and Courtney Richmond's second Motion to Amend/Correct Complaint, Doc. 63, is denied as futile. It is finally

ORDERED that all other pending motions—Docs. 38, 48, 52, 53, and 61—shall be denied as moot

DATED this 14 day of March, 2025.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE